UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOENE MAY HARTER,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. ED CV 14-01292-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Joene Harter appeals from the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security disability insurance benefits. The Court concludes that the ALJ's finding that Plaintiff's hepatitis C was nonsevere was supported by substantial evidence and that the ALJ gave specific, clear and convincing reasons for discrediting Plaintiff's subjective symptom testimony. The ALJ's decision is accordingly affirmed and the matter is dismissed with prejudice.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her application for benefits on August 31, 2011, alleging disability beginning January 1, 2007. Administrative Record ("AR") 15. The

ALJ found that Plaintiff had the medically determinable impairment of hepatitis C. AR 17. The ALJ concluded, however, that Plaintiff's hepatitis C did not cause an impairment or combination of impairments that has significantly limited her ability to perform basic work-related activities for 12 consecutive months. AR 17, 24. Accordingly, the ALJ concluded that Plaintiff was not disabled. AR 24.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ erred in: (1) concluding that Plaintiff's hepatitis C was nonsevere; and (2) assessing Plaintiff's credibility. See Joint Stipulation ("JS") at 5.

## III.
## DISCUSSION

### A. The ALJ Properly Determined that Plaintiff's Hepatitis C Was Nonsevere

Plaintiff contends that the ALJ erred in failing to find her hepatitis C severe at step two of the sequential evaluation. JS at 5-12. The step two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The Supreme Court has recognized that including a severity requirement at step two "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, (1987). "An overly stringent application of the severity requirement, however, violates the [Social Security Act] by denying benefits to claimants who do meet the statutory definition of disabled." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Yuckert,

482 U.S. at 156-58).

A severe impairment or combination of impairments exists when these impairments have more than a minimal effect on an individual's ability to do basic work activities. Webb, 433 F.3d at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. If a claimant meets her burden of demonstrating she suffers from an impairment affecting her ability to perform basic work activities, "the ALJ must find that the impairment is 'severe' and move to the next step in the SSA's five-step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (emphasis in original); Webb, 433 F.3d at 686. "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687 (internal quotation marks omitted).

At step two, Plaintiff bore the burden of proof to show that her impairments were severe and that they met the durational requirement. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). Here, as noted by the ALJ, there was substantial evidence in the record that contradicted Plaintiff's claim of severe disability. AR 20-24. For example, the records of Plaintiff's treating gastroenterologist, Dr. Daniel Seid, reflects that Plaintiff's hepatitis C

was generally treated successfully with anti-viral injections and that she had few, if any, side effects. During Plaintiff's interferon treatment in 2007, she reported only "minimal side effects" and "mild fatigue." AR 257-58. Similarly, after five months of treatment, Plaintiff reported only "mild fatigue." AR 274, 323. After 27 weeks of treatment, Plaintiff reported a rash and hives and the treatment was discontinued in early 2008. AR 289-90, 297. Despite discontinuing treatment, laboratory testing demonstrated that Plaintiff's liver function was normal, and she was advised to return in six months for another liver-function test. AR 317-18. Plaintiff's liver CT scans were normal in 2006 and 2010. AR 556. Ultrasounds performed in 2011 and 2012 showed that Plaintiff's liver was largely normal. AR 898. In June 2011, it was reported that Plaintiff "has done well" since stopping the interferon treatment and had "no complaints." AR 532-33. In August 2011, Plaintiff had a liver biopsy which showed only mild fibrosis and grade 2 hepatitis, which Dr. Seid characterized as "good" and not any different from Plaintiff's 2005 liver biopsy. AR 753.

      Plaintiff argues that she has shown that her impairment was severe because the hepatitis C caused lower extremity swelling and fatigue. JS at 6. Although the record contains some sporadic reports of ankle swelling and fatigue, see, e.g., AR 257, 274, 425, 491, 403, Plaintiff has not met her burden of showing how these intermittent symptoms prevent her from performing work-related functions for a 12-month period. Tellingly, Plaintiff continued to work at her regular job as a telemarketer after being diagnosed with hepatitis C in 2005, and also worked for more than a year after her alleged disability onset date. Plaintiff has not explained why she cannot work despite the fact that there is no evidence that her condition has worsened.

      Plaintiff also contends that the ALJ erred by relying upon the opinion of the testifying medical expert, Dr. Gerald Weingarten, in finding that her hepatitis C was nonsevere. JS at 7-12. Plaintiff argues that the ALJ should

have instead relied upon the opinions of the treating physician, Dr. Seid, and the examining physician, Dr. Robert Steinberg, both of whom reported that Plaintiff's complaints of fatigue and weakness were "reasonably consistent with" her hepatitis C. JS at 6 (citing AR 713, 738).

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did not treat or examine the plaintiff. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is in turn generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. Thus, the ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Orn, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(2)(i)-(ii).

The ALJ gave specific and legitimate reasons for rejecting the opinions of Dr. Seid and Dr. Steinberg. As the ALJ noted, when Plaintiff asked for Dr. Seid's opinion to submit to the Social Security Administration in support of her disability claim, Dr. Seid indicated that "[f]rom my notes and from consult

5

note[s] from Kaiser Sunset it seems that she doesn't have any symptoms or physical limitations." AR 779. After these findings were given to Plaintiff by Dr. Seid's staff, Plaintiff reported night sweats, excessive sleeping, weakness, and pain under her right rib. AR 779. A few days later, Dr. Seid drafted a letter that indicated that Plaintiff's "symptoms consist of fatigue, weakness." AR 572. There is no evidence in the record that Dr. Seid examined Plaintiff in the intervening period before making this finding. Likewise, it appears that Dr. Steinberg's opinions of Plaintiff's limitations are also based primarily upon Plaintiff's own subjective complaints.

Because those subjective complaints were found by the ALJ to be less than fully credible, as discussed in detail below, the ALJ did not err by giving less weight to Dr. Seid's and Dr. Stienberg's opinions. See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[A]n opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995))).

At step two of the sequential evaluation, the claimant bore the burden of showing that her impairments were severe. Plaintiff failed to meet that burden with respect to her hepatitis C. Accordingly, the ALJ's conclusion that Plaintiff's hepatitis C was nonsevere was supported by substantial evidence in the record, and Plaintiff is therefore not entitled to relief.

**B.    Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting her subjective symptom testimony. JS at 20-24. Plaintiff testified at the hearing to the following symptoms and limitations: she often experienced fatigue due to her hepatitis C; she had generalized weakness which at times caused her to be unable to perform household chores; since

undergoing treatment for hepatitis C, she had difficulty with attention, concentration, and memory; she often had pain and swelling in her feet and kept them elevated to relieve the swelling; and she could stand or walk two to three hours at a time and sit without her feet elevated for approximately an hour. AR 38-43.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (July 2, 1996) (explaining 20 C.F.R. § 404.1529(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834). The ALJ must consider a claimant's work record, observations of medical providers and third parties with

knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1284 & n.8. The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. Id.

The record shows that there were several clear and convincing reasons for discrediting Plaintiff's testimony. First, although Plaintiff reported that she stopped working on the alleged onset date of January 1, 2007, she in fact worked until March 2008 as a telemarketer, earning $3,282 in 2008 and $15,258.94 in 2007. AR 181. In weighing a claimant's credibility, the ALJ may properly consider inconsistencies in her testimony or inconsistencies between her testimony and conduct. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Relatedly, Plaintiff was able to engage in substantial gainful activity from the alleged onset date of January 1, 2007 until March 2008. AR 19. Thus, Plaintiff's claim that she has been disabled and unable to work since January 1, 2007, is necessarily undermined by the fact that she continued to work until March 2008. See Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988). Furthermore, as noted by the ALJ, Plaintiff's initial diagnosis of hepatitis C in 2005 did not prevent her from working for several years before the alleged onset date. See Bray v. Comm'r of Soc. Sec., 554 F.3d 1219, 1227 (9th Cir. 2009) (finding ALJ properly considered that claimant "recently worked as a personal caregiver for two years" and had "sought out other employment since then").

Second, the ALJ determined that Plaintiff's activities of daily living were inconsistent with her claims of disabling symptoms. AR 19. Plaintiff testified that she was able to drive, go grocery shopping, do laundry, cook, and do some light household chores. AR 48-50. Plaintiff also reported to her physicians that

8

she exercised 360 minutes a week at a moderate to strenuous level. AR 503. Although a claimant "does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)), the ability to perform certain activities of daily life can support a finding that the claimant's reports of his or her impairment are not fully credible, see Bray, 554 F.3d at 1227; Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1991) (as amended) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity" (citing Fair, 885 F.2d at 604)).

Third, the ALJ noted that, despite her complaints of disabling symptoms, Plaintiff went on a cruise and reported to her physicians that she was planning on going on another. AR 20 (citing AR 491). Although "the capacity to engage in periodic restricted travel" is not necessarily inconsistent with claims of pain-induced disability, Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986), the ALJ was nevertheless entitled to consider that Plaintiff was able to go on cruises despite her alleged disabling impairment.

Fourth, the ALJ found Plaintiff's appearance and demeanor during her testimony to be generally unpersuasive. AR 20. The Ninth Circuit has determined that, in assessing a claimant's credibility, an ALJ may rely upon "ordinary techniques of credibility evaluation," including the ALJ's personal observations of the claimant at the administrative hearing. See, e.g., Thomas, 278 F.3d at 960 (determining that ALJ properly relied in part on claimant's demeanor at hearing in assessing credibility); Light, 119 F.3d at 792 (upholding ALJ's finding that claimant generally lacked credibility as permissible basis for rejecting claimant's testimony). Here, the ALJ was entitled to consider Plaintiff's demeanor as one factor in finding Plaintiff not

fully credible.

Fifth, the ALJ noted that Plaintiff had a generally conservative treatment history. The ALJ observed that, although Plaintiff had received antiviral therapy for her hepatitis C, she no longer required that treatment and was not taking any medication for her hepatitis C. AR 19. A conservative treatment history is another legitimate basis for an ALJ to discount a claimant's credibility. See Tommasetti, 533 F.3d at 1039; see also Fair, 885 F.2d at 604 (finding that the claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment"). Plaintiff contends that her treatment history was not conservative, noting that she underwent interferon therapy, which is the only treatment currently available for hepatitis C, but was required to stop treatment because of the negative side effects. JS at 22. However, even assuming that the ALJ erred in relying upon Plaintiff's treatment history, any error would be harmless as the other reasons proffered by the ALJ were supported by substantial evidence in the record. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (noting that error can be harmless when irrelevant to ultimate disability conclusion).

Finally, the ALJ found Plaintiff not credible because she "ha[d] not provided convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming that the symptoms are present 'constantly' or all of the time." AR 19. Given the opacity of this statement and the lack of any citation to the record, the Court cannot find that this is a legally sufficient reason for finding Plaintiff not credible. However, any error is harmless as the ALJ provided several other valid reasons for discrediting Plaintiff's subjective symptom testimony, each of which is supported by substantial evidence in the record. See Molina, 675 F.3d at 1115; Stout, 454 F.3d at 1055. Accordingly, Plaintiff is not entitled to relief on this claim of error.


## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:  June 17, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge